## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| J&M SALES Inc., *et al*, | ) | Case No. 18-11801 (JTD) |
| | ) | (Jointly Administered) |
| _____Debtors._____ | ) | |
| | ) | |
| GEORGE L. MILLER, in his capacity as | ) | |
| Chapter 7 Trustee for the jointly | ) | |
| Administered bankruptcy estates of J&M | ) | |
| Sales Inc., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 20-50263 (JTD) |
| | ) | |
| MONARCH APPAREL GROUP, INC., | ) | |
| | ) | |
| _____Defendant._____ | ) | **Re: Adv. D.I. 18, 19, 22** |

## <u>MEMORANDUM OPINION AND ORDER</u>

The Chapter 7 Trustee (the "**Trustee**") commenced this adversary proceeding on January 22, 2020, seeking to avoid and recover six prepetition transfers totaling $279,513.00 (the "**Transfers**") made by the Debtors to Defendant, Monarch Apparel Group, Inc. ("**Defendant**" or "**Monarch**") pursuant to Sections 547, 548, and 550 of the Bankruptcy Code (the "**Code**") and to disallow claims pursuant to Section 502 of the Code.  Following an unsuccessful mediation, the Trustee filed a motion for summary judgment with respect to his claim under Section 547 (the "**Trustee's Motion**").[1]  Monarch filed its own motion for summary judgment with respect to the Trustee's claim under Section 550 ("**Monarch's Motion**"),[2] and then also made a cross-motion on the Trustee's Section 547 claim in its opposition to the Trustee's Motion[3]

---

[1] Adv. D.I. 18.
[2] Adv. D.I. 19.
[3] Adv. D.I. 22.

("**Monarch's Cross-Motion**") (together with Monarch's Motion and the Trustee's Motion (the

"**Motions**").  Oral argument on the Motions was held on April 4, 2022.  For the reasons

discussed below, all the Motions are denied.

## JURISDICTION & VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

Debtors operated discount retail stores under the name National Stores, Inc., where they

sold clothing, shoes, toys, and household items.[4]  Debtors commenced these cases on August 6,

2018 (the "**Petition Date**").

Defendant Monarch was and is a vendor that manufactured and sold women's and

children's apparel to or for the Debtors.[5]

During the ninety days before the Petition Date, that is between May 8, 2018, and August

6, 2018 (the "**Preference Period**"), the Debtors made six payments in satisfaction of thirteen

invoices received from Monarch.[6]  The payments were not made to Monarch, but were made to

Monarch's factor, Continental Business Credit ("**Continental**"), consistent with the instructions

on each of Monarch's invoices that stated:

> IMPORTANT – PAY ONLY TO CONTINENTAL BUSINESS
> CREDIT, INC. . . .This account and the merchandise herein are
> assigned and payable only to Continental Business Credit, Inc. to
> whom notice must be given of any merchandise returns, claims for
> shortage, non-delivery, or otherwise.[7]

---

[4] Complaint ¶ 15.
[5] Complaint ¶ 14.
[6] Complaint, Ex. A; D.I. 18, Ex. 1.
[7] D.I. 22 at 4; Chavez Decl., D.I. 23.

Continental holds a security interest in Monarch's accounts receivable pursuant to a Loan and Security Agreement (the "**Factoring Agreement**").[8]

On December 11, 2020, the Trustee commenced this adversary proceeding against Monarch, seeking recovery of the Transfers as preferential payments pursuant to Sections 547 and 550 of the Code.

## ANALYSIS

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). In considering whether summary judgment is appropriate, courts may consider pleadings, depositions, documents, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials that would be admissible or usable at trial. *See* Fed. R. Civ. Proc. 56 and 10A Fed. Prac. & Proc. Civ. § 2721 (4th ed.).

When the moving party's evidence shows a lack of genuine issue, the burden shifts to the opposing party to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[8] D.I. 18.

*Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must "do more than simply show that there

is some metaphysical doubt as to the material facts.").

    **II.**      **Preference Claim: Section 547**

      Section 547 of the Code provides that the Trustee may avoid:

> Any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such
>     transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>     (A) on or within 90 days before the date of the filing of the petition;
>     (B) between ninety days and one year before the date of the filing of the
>        petition, if such creditor at the time of such transfer was an insider;
>        and
> (5) that enables such creditor to receive more than such creditor would
>     receive if –
>     (A) the case were a case under chapter 7 of this title
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided
>        by the provisions of this title

11 U.S.C. § 547.  The Trustee asserts that he has satisfied all the elements of Section 547, that

Monarch has no valid defenses, and that judgment on his claim should therefore be entered in his

favor.  Monarch disagrees, arguing that the Trustee cannot prove his claim against it because

Monarch is not a creditor of the Debtors.[9]

      The Code defines a creditor as "an entity that has a claim against the debtor that arose at

the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  A

"Claim" is defined as a "right to payment, whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured; . . ."  11 U.S.C. § 101(9).

---

[9] Monarch also argues that the Transfers were made in the ordinary course of business, but I need not decide that issue to resolve this Motion.

4

In support of its position that it was not a creditor, Monarch points to the invoices it issued to Continental, which clearly state that they were payable only to Continental and that all rights in the account and the merchandise had been assigned to Continental. Monarch also points to the fact that it did not file a proof of claim in the Debtors' bankruptcy cases.

The Trustee acknowledges that he could have sued Continental as well but maintains that Monarch is a proper defendant without Continental. In support, he points to the Factoring Agreement,[10] which he contends shows that Monarch is a beneficiary of the Transfers. He also points to *In re Attaway, Inc.*, 180 B.R. 274 (Bankr. D. Or. 1995) for the proposition that payments made to a defendant's factor are recoverable from the defendant.

In *Attaway*, the Court found that the plaintiff could properly assert a claim against the defendants because under the agreement between the defendants and the factor, the defendants retained certain rights against the debtor. Specifically, the agreement provided that the factor "purchased all of the freight bills 'with recourse,' thereby enabling [the factor] to sell back any uncollected bills to the defendants, leaving the defendants then to look to [the debtor] for payment." *Id.* at 276. The fact that the accounts receivable were purchased "with recourse," meant that "the ultimate risk of [debtor's] nonpayment would fall upon the defendants." *Id.* at 277-78. This detail was important because it determined who, as between the factor and the defendants, held a claim against the debtor and was therefore a creditor. The Court explained:

---

[10] While Monarch argues that the Factoring Agreement is inadmissible because it was provided in the context of the parties' mediation, as I ruled at the hearing on April 4, 2022, the rules regarding the confidentiality of documents produced in connection with mediation do not apply to documents that are responsive to outstanding discovery requests. A party cannot fail to respond to discovery, produce responsive documents in mediation, and then assert that such documents are inadmissible because they were produced during mediation. Moreover, documents that are otherwise discoverable do not become undiscoverable simply because they were used during a mediation.

> If Attaway had not made the payments to Transport and Transport had charged back the bills of lading to the defendants they would then have had a right to payment or a "claim" against Attaway for payment on the bills.
> The fact that this claim was contingent does not make it any the less a claim under § 101(5), which explicitly includes contingent debts within its definition. As the Ninth Circuit has stated: "The rule is clear that a contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'"

*In re Attaway, Inc.*, 180 B.R. 274, 278 (Bankr. D. Or. 1995) (quoting *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir. 1987)).  Having found that the defendants had a contingent claim against the debtor, the Court concluded that they were therefore creditors of the debtor within the meaning of § 547(b).  *Id.* at 278; *see also In re Connolly North America, LLC*, 340 B.R. 829, 830-31, 837 (Bankr. E.D. Mich. 2006) (denying defendant's motion for summary judgment on preference claim where factoring agreement gave factor recourse against defendant if debtor failed to pay, making both defendant and the factor "creditors" under Section 547).

While the agreements at issue in *Attaway* and *Connolly* both clearly provided the factors with recourse against the defendants in certain situations, and therefore left the defendants as contingent creditors against the debtors, the agreement at issue here is not as clear. Although the Factoring Agreement plainly gives Continental the option to deal with the Debtors directly in the event of non-payment,[11] there is also some language in the Agreement that suggests Continental may have the option of proceeding against Monarch instead, which would leave Monarch holding a claim against the Debtors.[12]  Because it is unclear from the face of the Factoring Agreement whether the parties intended for Monarch to retain ultimate liability for non-payment

---

[11] *See, e.g.*, D.I. 18-2 at Section 5.5 (giving Continental the right to verify the validity, amount or any other matter relating to an Account); Section 8.5 (appointing Continental as attorney-in-fact of Monarch with full authority to take actions necessary or advisable to accomplish the purposes of the Factoring Agreement).
[12] *Id.* at Section 8.4 ("If any Event of Default shall have occurred… Borrower will remain liable for any deficiency. Continental shall not be required to proceed against any Collateral but may proceed against Borrower directly.").

of the invoices by the Debtors, it is also unclear whether Monarch is a creditor.  Accordingly, both the Trustee's Motion and Monarch's Cross-Motion must be denied.

**III.**    **Ability to Recover from Beyond the Transferee: Section 550**

Monarch also argues that the Trustee's claim under Section 547 fails for the additional reason that under Section 550, the Trustee cannot recover the Transfers from Monarch without also asserting a claim against Continental.  Because the statute of limitations has run against Continental, Monarch argues summary judgment on the claim against it must be granted. Specifically, Monarch argues that Section 550 requires a transfer be avoided as to the initial transferee before a trustee can seek recovery against a beneficiary of the transfer.[13]  The Trustee responds that the plain language of Section 550 makes clear that he is not required to name the initial transferee in an action to avoid a preferential transfer from a transfer beneficiary.  I agree.

Section 550 of the Code allows a trustee to recover avoidable transfers from parties other than just the transferee.  Section 550(a) states:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> >
> > (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  As Monarch's obligations to Continental were reduced whenever Continental received a payment from the Debtors, Monarch constitutes "an entity for whose benefit such transfer was made" under Section 550(a)(1) and is therefore a proper defendant.

---

[13] D.I. 19 at 8-9.

While the Trustee, of course, must still prove that the Transfers can be avoided under Section 547, to the extent he is able to do so they are recoverable from Monarch.

Still, Monarch argues that where a transfer cannot be avoided against the initial transferee, such as here where such a claim is time-barred, then it can also not be avoided against a beneficiary. In support, Monarch cites to *In re Brown School*, 368 B.R. 394, 407 (Bankr. D. Del. 2007), where the Court stated that "[b]ecause the Trustee cannot avoid the transfer to the initial transferee, TIAA, the Trustee cannot recover against the mediate transferee, MDC." But this statement by the *Brown* Court does not have the far-reaching effect that Monarch suggests. In the sentences just before the statement on which Monarch relies, the Court explained that the transfers at issue were not avoidable under the provisions of the cash collateral and sale orders. *Id.* ("In the Final Cash Collateral Order the Trustee acknowledged that the TIAA lien and payments on the TIAA debt were not avoidable. . . . Further, the Trustee requested (and the Court approved) the authority to pay a portion of certain asset sale proceeds to TIAA in partial satisfaction of its pre- and post-petition secured claims."). When read in context, it becomes clear that the Court intended to convey only that the fact that the transfers were not avoidable at all meant that they could not be recovered – whether from a beneficiary or otherwise. This is an unremarkable and well-established proposition, as Monarch itself acknowledges.[14] As the trustee in *Brown* apparently only had a claim under Section 547 against the initial transferee, and that claim failed, the claim under Section 550 also failed. But here, as discussed above, the Trustee may in fact have a claim under Section 547 directly against Monarch. If he proves that

---

[14] D.I. 19 at 7-8 (citing cases for the proposition that a trustee cannot recover a transfer from any subsequent transferees or beneficiaries without first avoiding the transfer under the relevant Code provision).

claim, he may then properly collect from Monarch, pursuant to Section 550.  For this reason,

Monarch's Motion is also denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

The Motions are **DENIED**.

Dated:  September 16, 2022

_____
JOHN T. DORSEY, U.S.B.J.